IN THE UNITED STATES DISTRICT COURT
FOR THE CENTRAL DISTRICT OF ILLINOIS
SPRINGFIELD DIVISION

| | | |
|---|---|---|
| CENTRAL LABORERS PENSION FUND, NORTHERN ILLINOIS & IOWA LABORERS' HEALTH AND WELFARE TRUST FUND, NORTHERN ILLINOIS ANNUITY FUND, ILLINOIS LABORERS' AND CONTRACTORS JOINT APPRENTICESHIP AND TRAINING FUND, NORTH CENTRAL ILLINOIS LABORERS' DISTRICT COUNCIL, LABORERS-EMPLOYERS COOPERATION AND EDUCATION TRUST, GPLDC LABORERS-EMPLOYERS COOPERATION EDUCATION TRUST, LIUNA NATIONAL HEALTH & SAFETY FUND, MIDWEST REGION LABORERS-EMPLOYERS COOPERATION EDUCATION TRUST, QUAD CITIES FOUNDATION FOR FAIR CONTRACTING TRUST, MIDWEST REGION FOUNDATION FOR FAIR CONTRACTING, DRUG TESTING FUND, GREAT PLAINS VACATION FUND, LABORERS' OF ILLINOIS VACATION FUND, LABORERS' LOCAL #309 POLITICAL ACTION COMMITTEE, LABORERS' LOCAL #309 BUILDING FUND, and LABORERS' LOCAL #309, | ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) | |
| Plaintiffs, | ) ) ) | |
| v. | ) ) | Case No. 19-3041 |
| TAYLOR RIDGE PAVING & CONSTRUCTION COMPANY, | ) ) ) ) | |
| Defendant. | ) | |

1

OPINION

RICHARD MILLS, United States District Judge:

Defendant moves to dismiss the Plaintiffs' second amended complaint for failure to state a claim.

## I. BACKGROUND

In their second amended complaint, the Plaintiffs seek the entry of Judgment in their favor and against Defendant Taylor Ridge Paving & Construction Co., as to liability for fringe benefit contributions, check-offs, liquidated damages, interest, audit costs, attorney's fees, court costs and applicable statutory remedies, pursuant to 29 U.S.C. § 1132(g)(2) and the Plaintiffs' Trust Agreements, owed to Plaintiffs for the time period of January 23, 2012 through March 15, 2020, as determined by a payroll compliance audit or otherwise.

The Plaintiffs further seek an Order directing that Defendant provide and/or make available to Plaintiffs or their auditor all of the Defendant's payroll and other business records for the time period of January 1, 2016 through March 15, 2020.

The Plaintiffs also seek leave to file supplemental proofs establishing the judgment sum for contributions determined to be due and owing for the applicable time period, in addition to other damages, costs and fees.

In support of its motion to dismiss, the Defendant states that it terminated all collective bargaining agreements in a letter dated October 1, 2015. The Parties

dispute the legal effect of a Memorandum of Agreement signed by Local 309 and the Great Plains District Council with the Defendant. The Defendant alleges it sent two letters terminating contracts, on October 30, 2013 (terminating "any" agreement), and another on January 23, 2014, to terminate the Memorandum of Agreement.

The Defendant also contends that any alleged collective bargaining agreements likely contain grievance-arbitration provisions for resolution of disputes, as do the 2008-2012 and 2013-2015 Local 309 Quad City Heavy Highway Agreements.

The Plaintiffs allege the Defendant's motion includes unsupported, undeveloped arguments that ignore the allegations of the Second Amended Complaint and exhibits thereto. Moreover, it ignores well-settled law regarding jurisdiction and that benefit plans are not required to pursue labor law remedies for delinquent contributions under ERISA.

## II. LEGAL STANDARD

At this stage, the Court accepts as true all of the facts alleged in the complaint and draws all reasonable inferences therefrom. *See Virnich v. Vorwald*, 664 F.3d 206, 212 (7th Cir. 2011). "[A] complaint must provide a short and plain statement of the claim showing that the pleader is entitled to relief, which is sufficient to provide the defendant with fair notice of the claim and its basis."

*Maddox v. Love*, 655 F.3d 709, 718 (7th Cir. 2011) (internal quotation marks omitted). Courts must consider whether the complaint states a "plausible" claim for relief. *See id.* The complaint must do more than assert a right to relief that is "speculative." *See id.* However, the claim need not be probable: "a well-pleaded complaint may proceed even if . . . actual proof of those facts is improbable, and . . . a recovery is very remote and unlikely." *See Independent Trust Corp. v. Stewart Information Services Corp.*, 665 F.3d 930, 935 (7th Cir. 2012) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 556 (2007)). "To meet this plausibility standard, the complaint must supply 'enough fact to raise a reasonable expectation that discovery will reveal evidence' supporting the plaintiff's allegations." *Id.*

## II.   DISCUSSION

<u>Jurisdiction of the Court</u>

The Defendant first alleges the Court lacks jurisdiction under Section 301 of the Labor-Management Relations Act ("LMRA"), 29 U.S.C. § 185, and Section 515 of ERISA, 29 U.S.C. § 1145. Some of the Plaintiffs have no standing to sue under ERISA as they are not a "participant, beneficiary, or fiduciary" designated to sue a plan under ERISA. The Defendant asserts the conclusory statement that six Plaintiffs are employee benefit plans and the remainder are "either labor organizations or labor management committees" is not enough to establish jurisdiction.

The Defendant relies in part on *Franchise Tax Bd. v. Construction Laborers Vacation Trust*, 463 U.S. 1 (1983), which pertains to the validity of state regulations despite possibly conflicting federal law such as ERISA. *See id*. at 21. The validity of state tax levies against funds held in trust under an ERISA-covered employee benefit plan, *see id*., at 27-28, is not particularly pertinent based on the allegations of this case, which concern six employee benefit plans along with a number of labor organizations or labor management organizations.

The Plaintiffs note that Defendant's Counsel has unsuccessfully raised the same jurisdictional argument previously in cases within this district. In *NECA-IBEW Pension Trust Fund, et al. v. Bays Electric, Inc.*, 894 F. Supp.2d 1071 (C.D. Ill. 2012), former United States District Judge Michael P. McCuskey concluded that a breach of contract between a union and an employer is actionable under section 301 of the LMRA and ERISA. *See id* at 1082-83.

Similarly, in *Central Laborers' Pension Fund, et al. v. Parkland Environmental Group*, 2013 WL 5658842 (C.D. Ill. 2013), United States District Judge Sue E. Myerscough noted that under well-established Seventh Circuit authority, "a multiemployer plan may sue as a fiduciary under 29 U.S.C. § 1132(e)." *See id*. at *3. Additionally, the Court has jurisdiction over "suits to enforce pension rights obtained under a collective bargaining Agreement [that]

may be brought under ERISA, 29 U.S.C. § 1132, or under § 301 of the LMRA, 29 U.S.C. § 185." *Id*. at *4

The Court concludes that Plaintiffs have plausibly alleged that the benefit plans may sue under both ERISA and the LMRA. The Plaintiffs who are labor organizations and/or labor management organizations may sue under § 185 of the LMRA.

(1)

Plaintiff Local 309 charged the Defendant with a labor law violation. The Defendant alleges the National Labor Relations Board's (NLRB) statutory authority determines whether an employer's refusal to bargain with the union violates Section 8(a)(5) of the LMRA, 29 U.S.C. § 158(a)(5). The Defendant claims the NLRB's scrutiny applied no "ordinary contract principles."

The Defendant states that the NLRB Decision acknowledges that it terminated the Memorandum of Agreement by written notice no later than January 23, 2014, but viewed the notice too late to prevent application of the Laborers' 309 2013-2015 Quad City CBA under Section 8(a)(5), which Defendant says the Plaintiffs' second amended complaint does not discuss. The Defendant further asserts that Section 8(f) labor agreements are properly terminated by employer letters in precisely that manner and that no magic words are required.

The Defendant claims that the NLRB applied the Memorandum of Agreement to cover only the one agreement reached by Local 309 since it was the only "Local Union" signatory to the Memorandum of Agreement with Defendant. Moreover, the Plaintiffs are too late under Section 301 to enforce the Memorandum of Agreement to audit expired contracts five years after notice of the NLRB ALJ Decision in 2015. Any grievance should have been filed within six months.

The Defendant alleges its agreement with Local 309 covers disputes such as this. Section 2 provides for matters not settled in Section 1 to be referred "to a Grievance Committee" and is "final and binding and conclusive upon all parties" under Section 5. The Defendant asserts the second amended complaint does not overcome these defects and should be dismissed.

However, there is at least a factual dispute as to whether the Defendant properly terminated the Memorandum of Agreement or the Local 309 Agreement through December 31, 2015. The NLRB found that Defendant's communications were insufficient to provide notice that it was terminating or repudiating the Agreements. Accordingly, the Defendant's argument regarding termination is without merit.

(2)

The Defendant further claims the second amended complaint is subject to dismissal because the Plaintiffs failed to exhaust the mandatory grievance-arbitration provisions in all purported agreements. The Plaintiffs are seeking to enforce collective bargaining agreements not signed by the Defendant. Moreover, sixteen agreements described in the second amended complaint are not alleged to be signed by Plaintiff Laborers' Local 309 or the Defendant.

The Defendant alleges that, to assert jurisdiction under both Section 301 and statutory labor law, the Plaintiffs must employ the grievance procedure in the collective bargaining agreements as a condition precedent to establishing a contractual violation in this Court. Section 301 jurisdiction requires strict compliance with the dispute resolution terms established in the bargaining agreement to avoid dismissal.

The Defendant claims that the Federal Arbitration Act, 9 U.S.C. § 9 requires the same process.

The Court concludes, however, that Plaintiffs were not required to exhaust mandatory grievance-arbitration provisions. *See Parkland*, 2013 WL 565882, at *5. This Court determined:

> Defendant has not shown that the NLRB or any other adjudicative body found that Plaintiffs or the Union repudiated the Agreement. Furthermore, Defendant has not shown that the six-month statute of limitations under section 10(b) of the NLRA is applicable to this case. Section 10(b) governs "unfair labor practices which include, *inter alia*, preventing an employee from participating in a labor organization or

forming a labor organization, refusing to bargain collectively with an employee's representative, and agreeing to boycott an employer."

*Id*. (quoting *NECA-IBEW Pension Trust Fund v. Bays. Co., LLC*, 2010 WL 1416879, at *2 (C.D. Ill. Apr. 1, 2010)). The Court further concluded that "[a] collection action brought by pension and welfare funds to collect allegedly delinquent contributions under ERISA and the LMRA does not relate to unfair labor practices." *Id*.

As the Plaintiffs allege, this is a debt collection suit in that they seek to collect past due contributions, dues and assessments, which is not implicated by the NLRA. There is at least a factual question as to whether the collective bargaining agreements between the local unions and area-wide associations that are part of the Memorandum of Agreement explicitly excluded payment of wages, assessments or fringe benefits from being subject to the arbitration proceedings. A party has no duty to arbitrate issues which it has not contractually agreed to arbitrate. *See John Wiley & Sons, Inc. v. Livingston*, 376 U.S. 543, 547 (1964).

Accordingly, the motion to dismiss is without merit to the extent that Defendant argues that Plaintiffs failed to exhaust the mandatory grievance-arbitration provisions in the Agreements.

(3)

The Defendant further asserts that the second amended complaint provides insufficient facts to show compliance with contract terms required by federal labor law.  Several of the purported agreements include hundreds of deleted pages.

The Defendant claims that ERISA and Section 302 of the LMRA each require a "written agreement with the employer."  Section 302(c)(5) requires it under criminal penalties and ERISA Section 515 recognizes a delinquent contribution cannot be "inconsistent" with another law such as Sections 301 or 302(c)(5).  *See Central States, Southeast and Southwest Areas Pension Fund v. Hartlage Truck Service, Inc.*, 991 F.2d 1357, 1360 (7th Cir. 1993).

The Defendant contends, therefore, that the Funds cannot demand an audit and money under Sections 301 or 302(c)(5) if an agreement is not in effect.  It asserts the Plaintiffs do not allege they possess an independent participation agreement from the Defendant.

In the second amended complaint, the Plaintiffs allege that Defendant was bound to the Memorandum of Agreement with the Great Plains District Council, the locals named in the Memorandum of Agreement, as well as the two agreements with Local 309.  The Plaintiffs further allege the NLRB ruled that Defendant remained bound to these agreements as of the date of its decision in December 2017.

Upon accepting the allegations of the complaint as true, the Court concludes that Plaintiffs at this stage have provided sufficient notice of their claims under ERISA and the LMRA.

(4)

The Defendant next alleges that ERISA Section 515 provides no jurisdiction for an audit. Section 515, entitled "Delinquent Contributions," is a vehicle for funds to compel employer contributions that have already arose, but have not been paid. The Defendant claims there are no allegations regarding whether the Funds cover its non-union employees.

The Defendant further asserts the remaining Plaintiffs not covered by ERISA do not have standing under Section 515 because they are not a covered "plan" within the definition of 29 U.S.C. § 1002(3) (defining "plan" as a pension or health & welfare plan) and are not fiduciaries within the meaning of 29 U.S.C. §§ 1002(21)(A) & 1132(a)(1). There are no such allegations in the Second Amended Complaint.

The Defendant contends there is no allegation it had an agreement with any Local Union except Laborers Local 309 for which payments allegedly accrued but were not paid. This is important because the Memorandum of Agreement only applies to agreements in which a Local Union agreed with an employer. The Defendant claims that agreeing to the Memorandum of Agreement does not

compel a signing employer to recognize all bargaining units within the geographic jurisdiction of all local unions, but only the "Local Union" with which it contracts. The Defendant states it entered into an agreement only with Local 309 and did not sign an agreement with any other Local Union or with a different bargaining unit "already recognized by the Local Union."

The Defendant alleges the above limitation is significant because neither Section 301 nor Section 315 apply to the Plaintiffs' request to audit agreements. The language of the Memorandum of Agreement confers no power to audit on behalf of entities unrelated to the Local 309 agreement.

In the second amended complaint the Plaintiffs allege that, pursuant to the Memorandum of Agreement, the Defendant agreed to be bound to the Trust Agreements of: the Central Laborers' Pension Fund; the North Central Illinois Laborers' Health & Welfare Fund; the Illinois Laborers' and Contractors' Training Trust Fund; the Northern Illinois & Iowa Laborers' Health & Welfare Trust Fund; the Central Laborers' Annuity Fund; the Northern Illinois Annuity Fund; the Great Plains Laborers' Annuity Fund; the Laborers' of Illinois Vacation Fund; the North Central Illinois Laborers' District Council Laborers-Employers Cooperation & Education Trust; the Midwest Region Foundation for Fair Contracting; the Midwest Region Organizing Committee; and the Laborers' Political League.

The complaint further alleges that, pursuant to the Trust Agreements referenced in the Memorandum of Agreement, the Trustees have the right to audit and examine the books and records of the Defendant to determine if Defendant has reported properly the hours worked by employees.

Additionally, an exhibit to the second amended complaint is the Trust Agreement for the Central Laborers' Pension Fund, which authorizes the Trustees to conduct an audit in order to determine the accuracy of the contributions to the Fund.

To the extent that Defendant is asserting that the non-ERISA Plaintiffs have no standing under Section 515 given they are not a covered "plan" as defined in ERISA, 29 U.S.C. § 1002(3), and the "fund Plaintiffs have no standing under Section 515 to assert claims for entities other than themselves," the Plaintiffs have the right to seek relief under the LMRA and Plaintiffs have indicated this intent in paragraphs 1 and 3 of the second amended complaint.

When the allegations of the complaint are accepted as true, the Plaintiffs have plausibly alleged the right to an audit pursuant to the Trust Agreements.

(5)

The Defendant next contends that the Memorandum of Agreement is an unenforceable illusory contract that Plaintiffs' allegations fail to sustain. The second amended complaint does not allege how the specific Employer associations

referenced in the Memorandum of Agreement resulted in agreements alleged to be the ones to which it refers.

However, the Defendant does not specify how the Memorandum of Agreement is illusory and unenforceable. Accordingly, the Court finds no merit to Defendant's assertion.

The Defendant further claims that the second amended complaint cites numerous exhibits without providing complete documents. All but two of the eighteen purported CBA's that are submitted with the operative complaint contain missing pages. The Defendant alleges this makes it impossible to determine how Local 309 could allege a violation of Section 301 when the grievance-arbitration procedure was not invoked. This would result in the Court having to determine various contract disputes instead of an arbitrator.

However, the Defendant acknowledges that Plaintiffs' counsel has provided the full documents. This includes pages in the filed exhibits that show the labor agreements exclude from arbitration the issues regarding non-payment of wages, assessments or fringe benefits. Accordingly, the Plaintiffs at least have plausibly alleged they were not required to invoke grievance-arbitration procedures to collect contributions, dues or assessments.

The Defendant contends the Plaintiffs failed to allege preconditions to contract enforcement were met, which requires dismissal. Additionally, the

Defendant alleges the Memorandum of Agreement claim violates traditional contract principles by alleging facially illusory contracts. While it signed the 2008-2012 CBA with Local 309, the Defendant asserts the Plaintiffs use the Memorandum of Agreement to extend Defendant's obligations beyond January 2014 to all CBA's to which Local 309 and/or the Great Plains District Council may ever have been a party. According to the Defendant, the facts in the second amended complaint do not support such an assertion when the Memorandum of Agreement terminated in 2014. The Defendant contends the Plaintiffs' assertions otherwise violate traditional rules of contract termination.

However, the Defendant has not specifically identified any defects in the Memorandum of Agreement. Given that Plaintiffs have included as exhibits to the second amended complaint all the collective bargaining agreements referenced in Section 2 of the Memorandum of Agreement, the "secondary documents" are "readily ascertainable."

The Defendant claims that the Memorandum of Agreement identifies only potential agreements with employer associations and other entities with which the Union might contract. There is no allegation that the Memorandum of Agreement identifies a single secondary document by title, work jurisdiction, date of execution and naming the unstated "other employer associations" for whom the Defendant is liable. As the Plaintiffs note, however, all of the collective bargaining agreements

between the contractor associations referenced in Section 2 of the Memorandum of Agreement have been included as exhibits to the second amended complaint. These agreements were duly negotiated and executed by the associations and the local unions. They are readily available for review for any contractor who adopts the agreements through the Memorandum of Agreement.

The Defendant further claims the Memorandum of Agreement points to no location where a current or future CBA might be found, thereby rendering the allegations ambiguous. Finally, the Defendant contends that Plaintiffs' unilateral interpretation of the Memorandum of Agreement is illusory because a party must have a "right to reject" an agreement by terminating it.

The named associations pertain to areas such as the Quad Cities, Peoria, Tazewell County, McLean County, etc., and the area-wide agreements relate to the areas in which the agreements operate.

Upon accepting the allegations of the Plaintiffs second amended complaint as true, the Court is unable to conclude that the agreements are illusory. Upon considering the Defendant's arguments, the Court concludes that Plaintiffs' allegations are enough to assert a plausible claim.

The Defendant's motion to dismiss will be denied.

Ergo, the Motion to Dismiss for Failure to State a Claim of Defendant Taylor Ridge Paving & Construction Co. [d/e 30] is DENIED.

This action is referred to United States Magistrate Judge Eric I. Long for further proceedings related to discovery and entry of a scheduling order.

ENTER: April 15, 2021

    FOR THE COURT:

*/s/ Richard Mills*
Richard Mills
United States District Judge
